# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 11CR1445 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| STEVEN MARTINEZ, | |
| Defendant. | |

HAYES Judge:

The matters before the Court are the motions to set aside bond forfeiture or for remission filed by surety Raymond Patenaude (ECF No. 128) and sureties Michael Herritt and Melanie Herritt. (ECF No. 130).

**BACKGROUND FACTS**

On April 14, 2011, a federal grand jury returned an Indictment charging Defendant Steven Martinez with various crimes related to a scheme to defraud his clients and the Internal Revenue Service ("IRS") out of more than $11 million. (ECF No. 1). Defendant was arrested and taken into custody by IRS agents. *Id.*

On April 18, 2011, a bond hearing was held before a United States Magistrate Judge. (ECF No. 50-2). During the hearing, Counsel for the Government described an extensive fraudulent scheme in which Defendant used millions of dollars for his own personal benefit. *Id.* at 5–8. The Government requested that the Magistrate Judge set a bond secured by real property in the amount of $500,000. *Id.* Defense counsel

proposed a personal appearance bond. *Id.* at 11. The Magistrate Judge set a bond in the amount of $350,000. (ECF No. 9). The Magistrate Judge issued an order setting conditions of pretrial release in part as follows:

> IT IS ORDERED that the defendant shall be released subject to the condition that the defendant: **(a) not commit a federal, state, or local crime during the period of release, (b) make all court appearances and (c) comply with the conditions itemized below...** execute a personal appearance bond in the amount of $350,000 P/S secured by: a trust deed to the United States on real estate approved by a Federal Judge; [and] the co-signature of one financially responsible adult.

*Id.*

On April 19, 2011, surety Raymond Patenaude signed an Appearance Bond which stated:

> The conditions of this bond are that the defendant is to appear as ordered by the United States District Court for the Southern District of California at San Diego . . . Further, the conditions of pretrial release set forth in the order filed in this matter and a part of the record therein are further conditions of this bond. . . . [I]f the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith.

(ECF No. 12 at 1). On April 19, 2011, Patenaude signed the Justification of Surety and Surety Agreement, which provided, in part: "If the defendant does not appear or comply with the conditions of release, [Patenaude] will be required to pay the amount of the bond, any security [he has] posted may be taken by the Government to satisfy the bond, and a judgment may be entered against [him]." (ECF No. 12 at 5).

On April 21, 2011, a bond hearing and surety exam was held before the Magistrate Judge. Defense counsel proffered the first surety as attorney Raymond Patenaude. Defense counsel noted that Patenaude was "a local attorney of some significance whose name you may even know." (ECF No. 50-3 at 16). Patenaude was not present at the hearing. Defense counsel proffered that Patenaude's net worth was in excess of $2 million. *Id.* During the April 21, 2011 hearing, defense counsel proposed another surety, Michael Herritt, who agreed to post his real property, which he owned "free and clear" (with the exception of some tax liens). (ECF No. 50-3 at 12, 19). Michael Herritt was present during the hearing, the Magistrate Judge informed

Herritt that Defendant was accused of serious federal offenses with substantial prison time, and Herritt acknowledged that he knew and understood the charges. The following exchange occurred between the Magistrate Judge and Michael Herritt:

> MAGISTRATE JUDGE: Well, you have to understand that for whatever reason Mr. Martinez [violates] any of the conditions of his release, any of the conditions, that you'll lose your home?
> HERRITT: If he - - if he comes back and appears back in court?
> MAGISTRATE JUDGE: If Mr. Martinez violates any of the conditions of release, all of them that I set - -
> HERRITT: Okay.
> MAGISTRATE JUDGE: And we'll go through them again, so you understand them.
> HERRITT: Okay.
> MAGISTRATE JUDGE: If Mr. Martinez violates the conditions of release, and a court, me, for example, finds that he did, in fact, do so, you will lose your home.
> HERRITT: Okay.
> MAGISTRATE JUDGE: Do you understand that?
> HERRITT: I understand that.
> MAGISTRATE JUDGE: Despite that, are you still willing to go forward?
> HERRITT: I am.
> . . .
> MAGISTRATE JUDGE: So by signing on for the bond, you're going to be responsible in part for Mr. Martinez' compliance with the bond; do you understand that?
> HERRITT: I understand that.
> MAGISTRATE JUDGE: His travel is restricted to San Diego County. He may not commit any federal, state or local offense. He must make all of his court appearances and comply with all these conditions. . . . And he may not contact any victims or witnesses in this case, other than through his attorney. Do you understand those terms and conditions?
> HERRITT: I do.
> MAGISTRATE JUDGE: And you agree that if Mr. Martinez violates any of them, from the most minor to the most significant, you will lose your home?
> HERRITT: I understand.
> MAGISTRATE JUDGE: Despite that, are you willing to sign on?
> HERRITT: I am.

*Id.* at 22–25. The Magistrate Judge accepted Michael Herritt as a surety. *Id.* at 25. Michael and Melanie Herritt obtained a trust deed posting their property in support of the bond. (ECF No. 12 at 7).

On April 21, 2011, Defendant was released from custody subject to the conditions of pretrial release. (ECF No. 13).

On November 28, 2011, Defendant filed a motion requesting certain modifications to his pretrial release conditions. (ECF No. 29). On December 8, 2011,

Patenaude signed a declaration acknowledging that "Mr. Martinez has filed a Motion asking the Court's permission to have contact with certain potential witnesses, to leave the country on a cruise with his family, to alter his curfew, and to delete (or change to passive) GPS monitoring" and stating that Patenaude has "no objection to Mr. Martinez' requests." (ECF No. 152-3 at 4). The declaration stated that Patenaude "continue[d] to understand that the bond [he] signed makes [him] liable should Mr. Martinez flee the jurisdiction, or otherwise fail to abide by the bond conditions imposed by the Court." *Id.* The record contains a declaration signed by Michael Herritt on December 9, 2011 acknowledging that he was aware of Defendant's request to modify his bail conditions to obtain "permission to have contact with certain potential witnesses, to leave the country on a cruise with his family, to alter his curfew, and to delete (or change to passive) GPS monitoring," and stating that he had "no objection to Mr. Martinez' requests." *Id.* at 2. The declaration stated that Michael Herritt "continue[d] to understand that the bond [he] signed makes [him] liable should Mr. Martinez flee the jurisdiction, or otherwise fail to abide by the bond conditions imposed by the Court."[1] *Id.*

On December 13, 2011, a hearing was held before the Magistrate Judge. Defendant made the following three requests to modify his bond: (1) permission to leave the United States and travel to Mexico on a one-week Disney cruise with his family; (2) removal of his GPS device; and (3) permission to have contact with certain witnesses. (ECF No. 130-4). With regard to the request to travel to Mexico, defense counsel informed the Magistrate Judge that Defendant had the permission of the sureties:

> In addition, I have declarations, should the court want them, from Mr. Herritt, who has his real property up as a surety, that he's aware of this motion, and has no objection. And also from Raymond Patenaude, who is the attorney, who was Mr. Martinez's personal surety in this case, that he's aware of this and has no objection to that [modification].

---

[1] Michael Herritt denied signing the December 9, 2011 declaration at the hearing held before this Court on October 24, 2013.

(ECF No. 130-4 at 11:1–6).

Over the objection of the Government, the Court modified the bond and allowed Defendant to travel to Mexico, replaced active GPS with voice monitoring to ensure compliance with his curfew, and permitted Defendant to have contact with certain witnesses. (ECF No. 130-4).

On March 2, 2012, Defendant was rearrested on violation of pretrial release conditions associated with charges of witness tampering. (ECF No. 33).

On March 9, 2012, the federal grand jury returned a Superseding Indictment charging Defendant with mail fraud, procuring false tax returns, Social Security fraud, aggravated identity theft, making false tax returns, money laundering, witness tampering, using a facility of interstate commerce in commission of murder-for-hire, soliciting a crime of violence, and criminal forfeiture. (ECF No. 38).

On March 13, 2012, the Government moved to forfeit the bond on the grounds that Defendant had committed a federal offense in violation of his conditions of release. (ECF No. 39).

On May 11, 2012, sureties Michael and Melanie Herritt filed a responsive brief in opposition to the motion to forfeit the bond filed by the Government. (ECF No. 54). On May 11, 2012, surety Raymond Patenaude filed a responsive brief in opposition to the motion to forfeit the bond. (ECF No. 55).

On June 8, 2012, Defendant filed a motion to stay determination of bond forfeiture until after trial. (ECF No. 59). On June 22, 2012, the Court granted the motion to stay determination of bond forfeiture. (ECF No. 61).

On August 10, 2012, Defendant entered pleas of guilty pursuant to a Plea Agreement to twelve counts in the Superseding Indictment, including mail fraud, procuring false tax returns, fraudulent use of a Social Security number of another person, aggravated identity theft, filing false personal tax returns, money laundering, witness tampering, murder-for-hire, and solicitation of a crime of violence. (ECF No. 67).

1   On April 12, 2013, the Court sentenced Defendant to serve a period of 286 months imprisonment in the custody of the Attorney General. (ECF No. 113). The Court ordered Defendant to pay restitution in the amount of $14,094,833.09. *Id.* On April 15, 2013, the Court entered a preliminary order of criminal forfeiture. (ECF No. 115).

On April 22, 2013, the Court vacated the stay of determination of the bond forfeiture. (ECF No. 117). On April 25, 2013, the Court held a hearing on the bond forfeiture and heard arguments of the parties. (ECF No. 118).

On April 29, 2013, the Court issued an order granting the Government's motion to forfeit the bond and setting a schedule for the sureties to file motions requesting that the Court set aside the forfeiture. (ECF No. 119).

On June 26, 2013, surety Raymond Patenaude filed his motion to set aside the bond forfeiture. (ECF No. 128). On June 28, 2013, sureties Michael and Melanie Herritt filed their motion to set aside the bond forfeiture. (ECF No. 130).

On August 12, 2013, the Government filed its response in opposition to surety Patenaude's motion to set aside the bond forfeiture and sureties Michael and Melanie Herritts' motion to set aside the bond forfeiture. (ECF No. 143).

On August 19, 2013, surety Raymond Patenaude filed his reply to the Government's response in opposition to setting aside the bond forfeiture. (ECF No. 145). On August 19, 2013, sureties Michael and Melanie Herritt filed their reply to the Government's response in opposition to setting aside the bond forfeiture. (ECF No. 146).

On October 23, 2013, the Government filed a supplemental memorandum regarding sureties' motions for bail remission or set aside. (ECF No. 152).

On October 24, 2013, the Court held a hearing on the bond forfeiture and heard testimony and arguments of the parties. (ECF No. 153).

## CONTENTIONS OF THE PARTIES

Surety Patenaude moves the Court to set aside the bond forfeiture on the ground that he did not understand his obligations when he signed the bond forms. Patenaude contends that the bond forms led him to believe he was only signing an appearance bond. Patenaude asserts that the other bond conditions, including Defendant's obligation not to commit a crime during his release, were not given to him and that he was unaware of the other bond conditions.

Patenaude moves the Court to set aside the bond forfeiture on the ground that justice does not require bond forfeiture under Federal Rule of Criminal Procedure 46. Patenaude contends that the Government suffered no prejudice and incurred only minimal cost when Defendant breached the conditions of his bond. Patenaude asserts that the "slap-dash manner" in which he signed the bond forms and the vagueness of the bond forms are mitigating factors. (ECF No. 128 at 20). Patenaude contends that he is not a professional bondsman and that he did not aid in apprehending Defendant because there was no need or opportunity to do so.

Sureties Michael and Melanie Herritt move the Court to set aside the bond forfeiture on the grounds that they did not understand the conditions of the bond when they signed it and believed they were signing an appearance bond. Michael and Melanie Herritt contend that the bond forfeiture must be set aside because the modification of Defendant's bond conditions materially increased their risk without their knowledge and consent. Michael and Melanie Herritt assert that they were not aware of the bond modification hearing and that they did not give their consent to modification of Defendant's bond conditions.

Michael and Melanie Herritt move the Court to set aside the bond forfeiture on the ground that justice does not require bond forfeiture under Rule 46. Michael and Melanie Herritt assert that they could not have participated in curing Defendant's violation of his bond conditions and that the Government incurred little or no cost or prejudice as a result of Defendant's violation. Michael and Melanie Herritt assert that

1  the forfeiture will cause an undue hardship on their marriage and financial security.
2  Finally, Michael and Melanie Herritt assert that the Court should subordinate the liens
3  of defense counsel and use those funds in lieu of the Herritts' home, because defense
4  counsel stated in court that he had subordinated his interest in Defendant's Ramona
5  property to the Herritts' bond.

6        Plaintiff United States contends that sureties Raymond Patenaude, Michael
7  Herritt, and Melanie Herritt have not met their burden of establishing grounds to set
8  aside the bond forfeiture under Rule 46. The Government asserts that Defendant was
9  willful in breaching his bond conditions and that the sureties did not aid the
10 Government in apprehending Defendant. The Government asserts that the sureties
11 should be held accountable on the bond for policy reasons, even though they were not
12 involved in Defendant's breach of his bond conditions and they are not professional bail
13 bondsmen. The Government contends:

> If a surety's innocence with respect to a defendant's breaching conduct and status as a family member or friend were sufficient, standing alone, to justify setting aside a significant portion of a bond forfeiture, courts could have no confidence that bond commitments by such persons would be understood as real by either defendants or sureties.

17 (ECF No. 143 at 14). The Government asserts that it suffered cost and inconvenience
18 as a result of Defendant's breach responding to and investigating Defendant's murder-
19 for-hire plot. The Government contends that the harm to the sureties is irrelevant,
20 because district courts are not permitted to take this factor into account when deciding
21 whether to set aside a forfeiture. The Government asserts that any technical defects of
22 the bond forms were de minimus and do not exempt the sureties from their obligations.
23 The Government contends that the declarations of Patenaude and Michael Herritt made
24 in December 2011 show that the sureties understood that the bond the sureties signed
25 made them "liable should Defendant flee the jurisdiction, *or otherwise fail to abide by*
26 *the bond conditions imposed by the court*." (ECF No. 152 at 7). Finally, the
27 Government contends that the Patenaude and Michael Herritt were aware of the
28 modifications to Defendant's bond and had consented to all of the specific

modifications, as evidenced by the December 2011 declarations.

## ANALYSIS

The Federal Rules of Criminal Procedure provide: "The court must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). "The forfeiture is thus mandatory." *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002). However, "the court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if: . . . (B) it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). "In determining whether or not to grant relief from a forfeiture, a court has wide discretion." *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir. 1979).

District courts are instructed to consider six factors when deciding whether to set aside a bond forfeiture: "(1) the defendant's willfulness in breaching a release condition; (2) the sureties' participation in apprehending the defendant; (3) the cost, inconvenience, and prejudice suffered by the government; (4) mitigating factors; (5) whether the surety is a professional or a [family member or friend of the defendant], and (6) the appropriateness of the amount of the bond." *Nguyen*, 279 F.3d at 1115–16. "'[T]hese are merely non-exclusive factors for consideration and not all of the factors need to be resolved in the government's favor'" in order for the district court to deny a surety's motion to set aside the forfeiture. *Id.* (quoting *United States v. Sar-Avi*, 255 F.3d 1163, 1167 (9th Cir. 2001)). Some circuit courts have explicitly held that district courts "may not consider the financial plight or interests of the movant [surety]." *United States v. Gutierrez*, 771 F.2d 1001, 1004 (7th Cir. 1985); *United States v. Diaz*, 811 F.2d 1412, 1416 (11th Cir. 1987) ("Even though appellants stand to lose their house as a result of this forfeiture, the financial plight of the movant is not within the criterion with which the court may base its decision on remission." (internal quotation marks and citation omitted)). The Court of Appeals for the Ninth Circuit has not addressed whether district courts may consider the hardship to the sureties in determining whether justice requires a bond to be forfeited.

**(1) Defendant's Wilfulness in Breaching Release Condition**

In this case, Defendant's breach of his pretrial release conditions was willful. The Court of Appeals has upheld the district court's bond forfeiture in cases where the defendant's breach was willful. *See Nguyen*, 279 F.3d at 1116; *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 603 (9th Cir. 1995); *United States v. Frias-Ramirez*, 670 F.2d 849, 853 (9th Cir. 1982); and *United States v. Castaldo*, 667 F.2d 20, 21 (9th Cir. 1981). However, the fact that a defendant's breach is willful does not necessarily mean the court cannot set aside the forfeiture. *See United States v. Minor*, 846 F.2d 1184, 1190 (9th Cir. 1988) (affirming a district court's remittance of part of the forfeiture, despite the district court's finding that the defendant's failure to appear at a hearing was "at least conscious").

**(2) Sureties' Participation in Apprehending Defendant**

The sureties' participation in apprehending Defendant is not a factor in this case. Defendant was rearrested without incident within days of the new law violation.

**(3) Cost, Inconvenience, and Prejudice to Government**

"The government has no obligation to furnish a bill of costs, nor can the cost and inconvenience factor be dismissed simply because they were not substantial." *Nguyen*, 279 F.3d at 1117. The Court of Appeals has upheld the district court's bond forfeiture where the expense to the government has been substantial. *See Castaldo*, 667 F.2d at 21 ("[T]he government incurred considerable, although unspecified, expense in its 170 day search for [the defendant]."). *Cf. Frias-Ramirez*, 670 F.2d at 853 n.4 (noting that the fact that "the defendant[] . . . [was] found or apprehended shortly after breaching the conditions of [his] release" is a distinguishing characteristic of the cases in which Courts of Appeals have reversed a district court's bond forfeiture).

**(4) Mitigating Factors**

In determining whether there are any mitigating factors, district courts inquire into "whether [the sureties] should be relieved of their obligations." *Amwest Sur. Ins. Co.*, 54 F.3d at 604. One of the mitigating factors that courts consider is whether the

sureties were aware of their obligations under the bond agreement. *See Frias-Ramirez*, 670 F.2d at 853.

In *United States v. Figuerola*, 58 F.3d 502 (9th Cir. 1995), the Court of Appeals remanded the case for an evidentiary hearing to determine whether the sureties understood their obligation on the bond after the district court declined to hear the sureties' testimony regarding their lack of understanding. *Id.* at 504. In noting that the sureties might be entitled to relief based on unilateral mistake, the Court of Appeals pointed out that the sureties, recent immigrants from Argentina and Peru, primarily spoke Spanish, "had no counsel, and were unfamiliar with American legal processes or bail procedures." *Id.* at 503. The Court of Appeals described the "obvious deficiencies" of the bond forms the sureties signed, including the facts that "[o]ne surety signed a form clearly intended for the defendant" and "[t]he other three sureties signed blank affidavit forms containing none of the required financial information" used to ensure "that each surety ha[s] sufficient assets to pay the amount of the bond." *Id.* at 503–04. The Court of Appeals noted that the magistrate judge failed to speak with the sureties regarding their obligations on the bond. *Id.* at 504.

(5) Whether Surety is a Professional Bondsman

If the surety is a defendant's family member or friend, rather than a professional bondsman, this factor weighs in favor of setting aside the bond forfeiture. *Castaldo*, 667 F.2d at 21 (explaining that professional bondsmen are "experienced at bonding criminal defendants" and more likely to be "aware of the risks of executing and filing a bond on [the defendant's] behalf."). In this case, the sureties were not professional bondsmen.

(6) Appropriateness of Amount of Bond

In this case, the amount of Defendant's bond was appropriate, and this factor weighs in favor of the Government.

<u>Surety Patenaude</u>

"A bail bond is a contract between the government, the defendant and his sureties, and is governed by general contract principles." *Figuerola*, 58 F.3d at 503. "Forfeiture is appropriate for violation of a release condition only if the parties have agreed to the condition. . . . The language of the bond contract is strictly construed in accordance with the terms contained therein. Thus, forfeiture would not be appropriate for breach of a condition imposed by the court without notice." *United States v. Vaccaro*, 51 F.3d 189, 193 (9th Cir. 1995) (internal quotation marks and citations omitted) (finding that it was proper for district court to forfeit bond where defendant signed order that contained "break no laws" condition); *see also United States v. LePicard*, 723 F.2d 663, 665 (9th Cir. 1984) (reversing judgment of forfeiture for breach of "break no laws" condition imposed on defendant after the bond was posted); *United States v. Lujan*, 589 F.2d 436, 438 (9th Cir. 1978) ("The language of the bond contract is strictly construed in accordance with the terms contained therein.").

In this case, Patenaude testified that he was not aware of the conditions of Defendant's pretrial release and that he believed he was signing an appearance bond. There is no evidence that Patenaude was informed of the conditions of Defendant's pretrial release, including the "break no laws" condition.[2] The Court finds that justice requires that the entire bond forfeiture be set aside as to Patenaude. "Forfeiture is appropriate for violation of a release condition only if the parties have agreed to the condition," and there is no evidence that Patenaude was informed of Defendant's pretrial release conditions. *Vaccaro*, 51 F.3d at 193.

<u>Sureties Michael and Melanie Herritt</u>

In this case, Magistrate Judge Dembin held a surety exam as to Michael Herritt, at which Magistrate Judge Dembin informed Michael Herritt of Defendant's pretrial

---

[2] Patenaude's situation is different from Michael Herritt's situation, because Michael Herritt was informed of Defendant's pretrial release conditions at the April 21, 2011 bond hearing and surety exam held before Magistrate Judge Dembin. *See* ECF No. 50-3 at 22–25. The Magistrate Judge did not conduct a surety exam as to Patenaude. *See id.* at 26.

release conditions. The Court finds that Michael Herritt expressly consented to the modifications of Defendant's bail conditions as evidenced by the December 9, 2011 declaration.[3] However, the Court concludes that justice does not require complete bail forfeiture against the Herritts. *See* Fed. R. Crim. P. 46(f)(2). Although the Government suffered some cost as a result of Defendant's breach, the Court finds that the circumstances do not warrant a $350,000 forfeiture. The Government incurred costs related to Defendant's murder-for-hire plot over the course of about three days, including (1) videotaping Defendant's meeting with the confidential informant; (2) identifying another participant in the murder-for-hire plot; and (3) arresting Defendant at his place of work. (ECF No. 143 at 15–16). The cost to the Government was limited to a discrete period of time and Defendant was arrested without incident. Michael and Melanie Herritt are friends of the Defendant and not professional bondsmen. There was no need or opportunity for the Herritts to aid in apprehending Defendant, because Defendant was rearrested at his place of work. The fact that Defendant "[was] found or apprehended shortly after breaching the conditions of [his] release" is a distinguishing characteristic of the cases in which Courts of Appeals have found that the bond forfeiture should be set aside. *Frias-Ramirez*, 670 F.2d at 853 n.4. The Court grants remission of the bond in the amount of $335,000.

---

[3] On October, 24, 2013, Michael Herritt testified that he did not sign the December 9, 2011 declaration, which stated that he was aware of, and consented to, the modifications to Defendant's pretrial release conditions. The Court does not find Michael Herritt's testimony credible.

**CONCLUSION**

IT IS HEREBY ORDERED that Raymond Patenaude's motion to set aside bond forfeiture (ECF No. 128) is GRANTED in full and Michael and Melanie Herritt's motion to set aside bond forfeiture (ECF No. 130) is GRANTED in the amount of $335,000.

DATED: November 12, 2013

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge