UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN MARTINEZ,<br><br>Defendant. | Case No.: 11cr1445 / 24cv1020 - WQH<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, filed by Defendant Steven Martinez. ("§ 2255 Motion," ECF No. 170.)

I.  **Background**

On April 14, 2011, Martinez was charged by Indictment with mail fraud in violation of 18 U.S.C. § 1341, procuring a false tax return in violation of 26 U.S.C. § 7206(2), fraudulent use of a Social Security number of another person in violation of 42 U.S.C. § 408(a)(8), aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), making a false tax return in violation of 26 U.S.C. § 7206(1), money laundering in violation of 18 U.S.C. § 1957, and aiding and abetting in violation of 18 U.S.C. § 2. (ECF No. 1.)

On March 9, 2012, Martinez was charged in a First Superseding Indictment which contained the same charges as brought in the original Indictment and added charges of witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A), use of a facility of interstate

commerce in commission of murder-for-hire in violation of 18 U.S.C. § 1958, and solicitation of a crime of violence in violation of 18 U.S.C. § 373. (ECF No. 38.)

On August 10, 2012, Martinez entered a guilty plea pursuant to the terms of a written Plea Agreement. Martinez pled guilty to Count 4 of the First Superseding Indictment, mail fraud in violation of 18 U.S.C. § 1341; Count 7, procuring a false tax return in violation of 26 U.S.C. § 7206(2); Count 21, fraudulent use of a Social Security number of another person in violation of 42 U.S.C. § 408(a)(8); Count 33, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); Count 47, making a false tax return in violation of 26 U.S.C. § 7206(1); Count 49, money laundering in violation of 18 U.S.C. § 1957; Counts 50–53, witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A); Count 54, use of a facility of interstate commerce in commission of murder-for-hire in violation of 18 U.S.C. § 1958; and Count 55, solicitation of a crime of violence in violation of 18 U.S.C. § 373. (ECF No. 67.) During the plea colloquy, the Court reviewed the Plea Agreement with Martinez, including the rights he was giving up, the maximum penalties, the factual basis, and his waiver of appeal and collateral attack. (*See* ECF No. 168.) Martinez confirmed that he understood the Plea Agreement, including the provision waiving appeal and collateral attack. *See id*. at 45. After reviewing the factual basis, and confirming Martinez's plea of guilty, the Court accepted the guilty plea. *See id*. at 47.

The factual basis of Martinez's Plea Agreement begins with the following introductory statements applicable to all crimes:

1. Defendant STEVEN MARTINEZ …, a resident of Ramona, California, was a tax return preparer beginning no later than January 1998, and continuing up to and including April 15, 2011. Defendant MARTINEZ owned and operated a tax return preparation business in San Diego, California, under various business names, including but not limited to Goertz & Martinez LLP, and Steven Martinez, CPA, AAC.
2. Beginning in at least January 2004, and continuing up to and including at least October 2008, within the Southern District of California, and elsewhere, defendant MARTINEZ engaged in a scheme to defraud his taxpayer-clients by filing false tax returns with the IRS and California Franchise Tax Board (FTB), and rather than remitting his clients full tax

payments, defendant MARTINEZ stole a majority of the money and used it for his own personal benefit.

3. In order to conceal his scheme to defraud, defendant MARTINEZ, opened or caused others to open bank accounts in the names of various nominee entities, including but not limited to: Goertz & Martinez CTA, Inc., Goert-Martinez CTA, Inc., Via Brazil, Inc., 2011 Holdings, Inc., EFTPS-2007, Inc., and EFTPS-2008, Inc. (hereinafter collectively referred to as the "nominee bank accounts"). These nominee entities and corresponding bank accounts had no relation to the IRS, FTB, or the Electronic Federal Tax Payment System (EFTPS).

4. Defendant MARTINEZ prepared and provided to his clients both federal and state income tax returns accurately indicating what the taxpayers owed to the IRS and FTB.

5. Defendant MARTINEZ, with the intent to defraud, requested his clients to give him checks payable to one or more of the nominee accounts in the amounts indicated on their returns as the income tax and estimated tax payments due to the IRS and FTB.

6. Defendant MARTINEZ falsely represented to his clients that he would forward these sums to the IRS and FTB as payment of their tax liabilities.

7. Defendant MARTINEZ, with the intent to defraud, diverted millions of dollars of these funds to his own personal use, rather than forwarding all of the funds to the relevant taxing authority as promised to the taxpayer.

8. Defendant MARTINEZ, with the intent to defraud, prepared a false set of tax returns for his clients showing a substantially lower amount of tax due and owing. Without his clients' knowledge, consent, or authorization, defendant MARTINEZ filed the false tax returns with IRS and FTB in lieu of the original returns presented and provided to his clients.

9. Defendant MARTINEZ misused his clients' means of identification, including their names and Social Security numbers (SSNs), to prepare and file false tax returns without his clients' knowledge, consent, or authorization.

10. Defendant MARTINEZ fraudulently obtained more than $11 million from his clients and converted these proceeds of the fraud to his own personal use and benefit. For example, Defendant MARTINEZ used the proceeds to (a) make home improvements (including a playground and a pool); (b) purchase real estate, including a beach home in Mexico; (c) pay for use of a private airplane; (d) make payments associated with a boat, motorhome, and limousine; (e) make investments of more than $2 million in other entities; (f) make payments of more than $2 million for his personal credit cards and loans; and (g) pay fees associated with one of his civil attorneys (K.C.N.).

11. Defendant MARTINEZ, with the intent to defraud, knowingly and intentionally filed his own false personal income tax returns with the IRS and FTB for at least tax years 2004, 2005, 2006, and 2007.
    a. At the time the tax returns were originally filed with the IRS and FTB, Defendant MARTINEZ failed to report more than $11 million in additional income that he received by fraudulently converting a majority of his client's tax payments for his own personal use.
12. Defendant MARTINEZ, with the intent to defraud, stole tax payments from other taxpayer-clients in 2009, 2010, and 2011 in order to repay some of the taxpayer-clients that discovered defendant MARTINEZ had stolen their tax payments rather than remit them to the IRS and FTB, as defendant Martinez promised.

(ECF No. 67 at 6–9.)

The factual basis of the Plea Agreement related to mail fraud additionally states:

13. On or about October 11, 2007, within the Southern District of California and elsewhere, defendant MARTINEZ, for the purpose of executing the aforesaid material scheme and attempting to do so, knowingly caused to be placed in any post office and authorized depository for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, to wit, a false income tax return on IRS Form 1040 for tax year 2006, which he submitted to the IRS on behalf of his taxpayer-clients M.H. and S.H.
14. On or about the dates set forth below in paragraphs 14(a) to (e), within the Southern District of California and elsewhere, defendant MARTINEZ, for the purpose of executing the aforesaid material scheme and attempting to do so, knowingly caused to be placed in any post office and authorized depository for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, as described below:
    a. On or about June 24, 2006, the item placed in the U.S. mail was IRS Form 1120S for tax year 2005 for taxpayer C.I.I.;
    b. On or about July 20, 2006, the item placed in the U.S. mail was IRS Form 1040 for tax year 2004 for taxpayers J.V.S. and M.A.S.;
    c. On or about October 5, 2007, the item placed in the U.S. mail was IRS Form 1120S for tax year 2006 for taxpayer C.I.I.;
    d. On or about October 15, 2007, the item placed in the U.S. mail was IRS Form 1040 for tax year 2006 for taxpayers A.L.C. and A.M.C.; and
    e. On or about May 17, 2008, the item placed in the U.S. Mail was IRS Form 1120S for tax year 2007 for taxpayer C.I.I.

*Id.* at 9–10.

The factual basis of the Plea Agreement related to fraudulent use of a Social Security number of another person additionally states:

17. On or about April 15, 2006, within the Southern District of California and elsewhere, defendant MARTINEZ did knowingly disclose and use the SSN, to wit: XXX-XX-8044, of another person, namely, the person with initials J.D.S., to file a false and fraudulent federal income tax return, to wit: a 2005 Form 1040, filed with the IRS under the person with initials J.D.S., in violation of the laws of the United States, to wit: Title 18, United States Code Section 1341, and Title 26, United States Code, Section 7206(2).

18. In addition, on or about the dates set forth below (Column "A") , within the Southern District of California and elsewhere, defendant MARTINEZ did knowingly disclose and use the SSN (Column "B") of another person to file a false and fraudulent federal income tax return (Column "C") filed with the IRS under the names set forth below (Column "D"), in violation of the laws of the United States, to wit: Title 18, United States Code Section 1341, and Title 26, United States Code, Section 7206(2):

| "A" | "B" | "C" | "D" |
|---|---|---|---|
| Date Tax Return Filed | Social Security Number | Tax Return | Taxpayer |
| April 15, 2006 | XXX-XX-4487 | 2005 1040 | M.S. |
| July 24, 2006 | XXX-XX-9182 | 2004 1040 | J.V.S. |
| Oct. 14, 2006 | XXX-XX-9088 | 2005 1040 | A.M.C. |
| April 15, 2007 | XXX-XX-8044 | 2006 1040 | J.D.S. |
| April 15, 2007 | XXX-XX-9182 | 2006 1040 | J.V.S. |
| April 15, 2007 | XXX-XX-4487 | 2006 1040 | M.S. |
| Oct. 15, 2007 | XXX-XX-3248 | 2006 1040 | S.H. |
| Oct. 15, 2007 | XXX-XX-8853 | 2006 1040 | M.H. |
| Oct. 18, 2007 | XXX-XX-9088 | 2006 1040 | A.M.C. |
| April 15, 2008 | XXX-XX-1713 | 2007 1040 | C.L.A. |
| Oct. 15, 2008 | XXX-XX-9088 | 2007 1040 | A.M.C. |

1 | *Id*. at 12–13.

2 |     The factual basis of the Plea Agreement related to aggravated identity theft additionally states:

> 19. On or about April 15, 2006, within the Southern District of California and elsewhere, defendant MARTINEZ, during and in relation to the felony offense of mail fraud, in violation of Tile 18, United States Code, Section 1341, and during and in relation to the felony offense of using the SSN to wit: XXX-XX-8044, of another person, namely, the person with initials J.D.S., to file a false and fraudulent federal income tax return, to wit: a 2005 Form 1040, filed with the IRS under the person with initials J.D.S., in violation of Title 42, United States Code, Section 408(a)(8), knowingly possessed and used, without lawful authority, a means of identification of another person, to wit: the name of the person with initials J.D.S. and the SSN of the person with initials J.D.S., namely XXX-XX-8044, knowing that said means of identification belonged to the person with initials J.D.S.
>
> 20. In addition, on or about the dates set forth below (Column "A"), within the Southern District of California, defendant MARTINEZ, during and in relation to the felony offense of mail fraud, in violation of Title 18, United States Code, Section 1341, and during and in relation to the felony offense of using the SSN (Column "B") of another person to file a false and fraudulent federal income tax return (Column "C") filed with the IRS under the names set forth below (Column "D"), in violation of Title 42, United States Code, Section 408(a)(8), knowingly possessed and used, without lawful authority, a means of identification of another person, to wit: the names (Column "D") and the SSNs (Column "B"), knowing that said means of identification belonged to another person:

| "A" | "B" | "C" | "D" |
|---|---|---|---|
| Date Tax Return Filed | Social Security Number | Tax Return | Taxpayer |
| April 15, 2006 | XXX-XX-4487 | 2005 1040 | M.S. |
| July 24, 2006 | XXX-XX-9182 | 2004 1040 | J.V.S. |
| Oct. 14, 2006 | XXX-XX-9088 | 2005 1040 | A.M.C. |
| April 15, 2007 | XXX-XX-8044 | 2006 1040 | J.D.S. |
| April 15, 2007 | XXX-XX-9182 | 2006 1040 | J.V.S. |

| "A" | "B" | "C" | "D" |
|---|---|---|---|
| Date Tax Return Filed | Social Security Number | Tax Return | Taxpayer |
| April 15, 2007 | XXX-XX-4487 | 2006 1040 | M.S. |
| Oct. 15, 2007 | XXX-XX-3248 | 2006 1040 | S.H. |
| Oct. 15, 2007 | XXX-XX-8853 | 2006 1040 | M.H. |
| Oct. 18, 2007 | XXX-XX-9088 | 2006 1040 | A.M.C. |
| April 15, 2008 | XXX-XX-1713 | 2007 1040 | C.L.A. |
| Oct. 15, 2008 | XXX-XX-9088 | 2007 1040 | A.M.C. |

*Id.* at 13–15.

On April 12, 2013, the Court sentenced Martinez to a total term of imprisonment of 286 months on all counts of conviction. (*See* ECF No. 169 at 47–49.) This sentence included the low-end of the advisory Guideline range of a total of 262 months in custody concurrent for all counts except aggravated identity theft, plus a mandatory 24-month consecutive prison term for aggravated identity theft. The sentence also included a total of five years of supervised release following the custodial sentence, restitution in the amount of $14,094,833.09, and a special assessment in the amount of $1,200.00. At the conclusion of the sentencing hearing, Martinez's counsel affirmed that Martinez waived his right to appeal and collaterally attack his convictions and sentence, with an exception not relevant to the pending § 2255 Motion. *Id.* at 57. On April 16, 2013, the Court entered the Judgment. (ECF No. 116.) On July 29, 2013, the Court entered an Amended Judgment. (ECF No. 140.)

On June 10, 2024, Martinez filed the pending § 2255 Motion. (ECF No. 170.) Martinez contends in claim one of the § 2255 Motion:

> Defendant did not commit Aggravated Identity Theft, Title 18, United States Code, Section 1028A (Count 33). He did not commit aggravated identity theft because, based on the recent United States Supreme Court decision in [*United States v.*] *Dubin*[, 599 U.S. 110 (2023)], his use of his clients' means of

> identification in relation to two separate §1028A(a)(l) predicate offenses were not at the crux of the crime, what made either offense criminal. Defendant's conviction, term of imprisonment and term of Supervised Release for this crime are in violation of the Constitution and should be vacated, set aside or corrected pursuant to Title 28, United States Code, Section 2255.

(ECF No. 170 at 2.) Martinez contends in claim two of the § 2255 Motion:

> Defendant did not violate Title 42, United States Code, Section 408(a)(8), Fraudulent Use of a Social Security Number of Another Person (Count 21). He did not violate §408(a)(8) because, based on the decision in *Dubin*, which Defendant argues is also applicable to §408(a)(8), his disclosure, use, or compelled disclosure of his clients' Social Security number was not at the crux of its predicate offense's crime, what made its predicate offense criminal. Defendant's conviction, term of imprisonment and term of Supervised Release for this crime are in violation of the Constitution and should be vacated, set aside or corrected pursuant to Title 28, United States Code, Section 2255.

*Id*.

On July 28, 2024, the Government filed an opposition to the § 2255 Motion. (ECF No. 174.) The Government contends:

> First, Martinez validly waived his right to collaterally attack his convictions and sentences on Counts 21 and 33. Second, even if the appellate waiver did not apply, Martinez's collateral attack is barred by the statute of limitations because he did not file his motion within one-year of the judgment being entered and the Supreme Court did not explicitly make his claim retroactive in *Dubin* allowing him to file his motion in 2024. Finally, even if his collateral attack was not waived and barred, Martinez's claims fail because the application of *Dubin* to the facts and circumstances of his case does not invalidate the convictions and sentences imposed on Counts 21 and 33.

*Id*. at 4.

On October 15, 2024, Martinez filed a reply in support of the § 2255 Motion. (ECF No. 183.) Martinez contends that the § 2255 Motion was timely filed within one year of *Dubin* because "*Dubin* is a new substantive rule retroactive … to cases brought on collateral review." *Id*. at 8. Martinez contends that "[t]he [Plea] Agreement's waiver of collateral attack is inoperative to Defendant's two claims … because his conviction and

1  corresponding sentence underlying the two claims are illegal and in violation of the
2  Constitution based on the Supreme Court decision in *Dubin*." *Id*. at 11. Martinez contends
3  that "[t]he Defendant has demonstrated both cause to excuse his procedural default and
4  actual prejudice" because "[h]is two claims are uniquely nuanced and syncopated so much
5  so that their legal basis remained so novel it was not reasonably available to counsel back
6  in 2012 nor until *Dubin*." *Id*.

## II. Discussion

### A. Standard of Review

A federal prisoner making a collateral attack against the validity of his conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. Section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Congress enacted § 2255 to simplify the habeas process for federal prisoners. The section provides 'a remedy [in the sentencing court] exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.'" *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (quoting *Hill v. United States*, 368 U.S. 424, 427 (1962)). "Because a § 2255 motion is 'commensurate' with habeas relief, it may only be used to collaterally attack a conviction and sentence 'upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States.'" *Id*. (quoting 28 U.S.C. § 2255; citing *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981) ("[Motions under § 2255 are limited to:] (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the

sentence, (3) challenges to the length of a sentence imposed in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.")).

### B. Waiver

As an initial matter, the Government contends that Martinez waived his right to collaterally attack his convictions and sentences on the two counts he now challenges in his § 2255 Motion. Martinez's Plea Agreement states that, "[i]n exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel." (ECF No. 67 at 32.) The Court confirmed Martinez's knowing and voluntary waiver of his right to collaterally attack his conviction during the change of plea hearing. (ECF No. 168 at 45.) The pending § 2255 Motion does not contain a claim for ineffective assistance of counsel; accordingly, by the terms of his Plea Agreement, Martinez has waived his collateral attack in his § 2255 Motion. Typically, "a change in the law does not make a plea involuntary and unknowing. That a defendant does not foresee the specific issue that he now seeks to appeal does not place that issue outside the scope of his waiver." *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021) (quotations omitted). "A plea agreement is no different in this respect from any other contract in which someone may have buyer's remorse after an unforeseen future event—the contract remains valid because the parties knowingly and voluntarily agreed to the terms. There is no do-over just because a defendant later regrets agreeing to a plea deal." *Id*. "The analogy between plea agreements and private contracts is imperfect, however, because the Constitution imposes a floor below which a defendant's plea, conviction, and sentencing may not fall. For example, … [a] waiver of appellate rights will … not apply if a defendant's sentence is illegal, which includes a sentence that violates the Constitution." *United States v. Torres*, 828 F.3d 1113, 1124–25 (9th Cir. 2016) (quotations and citations omitted).

Martinez contends that his waiver in the Plea Agreement does not prevent the consideration of the merits of his § 2255 Motion because his "conviction and sentence are

illegal, violate the Constitution," and he is actually innocent of aggravated identity theft and fraudulent use of a Social Security number of another person based upon the holding of *Dubin*. (ECF No. 183 at 11.) The Ninth Circuit "recognizes a claim of actual innocence that is cognizable under § 2255." *United States v. Berry*, 624 F.3d 1031, 1038 n.5 (9th Cir. 2010) (citing, *inter alia*, *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc)). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime." *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014). In order to assess whether Martinez has demonstrated actual innocence in light of *Dubin*, the Court considers the merits of Martinez's claims in his § 2255 Motion in Section II.D. below. For the reasons discussed in Section II.D., the Court finds that Martinez has not demonstrated that he is actually innocent of Counts 21 or 33 of the First Superseding Indictment. Accordingly, Martinez has not overcome his waiver of his right to collaterally attack his conviction and sentence.

### C. Timeliness

The Government alternatively contends that Martinez's § 2255 Motion is barred by § 2255's limitations period because he did not file his motion within one-year of the judgment being entered and the Supreme Court did not explicitly make his claim retroactive in *Dubin*. Martinez responds that his § 2255 Motion is timely because it was filed within one-year of the decision in *Dubin*, and "*Dubin* is a new substantive rule retroactive … to cases brought on collateral review." (ECF No. 183 at 9.)

Pursuant to § 2255(f)(3), Martinez's § 2255 Motion could be considered timely if it was filed within one year of the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). In *Dubin*, the Supreme Court did not state that its holding was retroactive to cases on collateral

review. The Ninth Circuit has not addressed the issue and district courts are split as to whether *Dubin* is retroactive in this context. *Compare United States v. Buck*, No. 2:19CR136-KJD-BNW, 2024 WL 1554202, at *2 (D. Nev. Apr. 9, 2024) ("[A]ssuming, without deciding, that *Dubin* did recognize a new right, Buck's argument would still fail because nothing in that opinion was made retroactive to cases on collateral review."); *with Paige v. United States*, No. 2:22-CR-00091-NT, 2024 WL 2245763, at *4 (D. Me. May 17, 2024), report and recommendation adopted, No. 2:22-CR-00091-NT, 2024 WL 3014669 (D. Me. June 14, 2024) ("Because *Dubin* narrowed the range of conduct punishable under the statute, it can apply retroactively to certain cases on collateral review, which the Government did not challenge."); *United States v. Milligan*, No. CR 19-424 (TJK), 2024 WL 2110136, at *3 n.4 (D.D.C. May 10, 2024) ("The Government does not contest that *Dubin* applies retroactively."). This Court need not decide the issue because, for the reasons discussed below, the Court finds that Martinez's § 2255 Motion fails on the merits.

**D. Merits**

First, the Court considers the merits of claim one of the § 2255 Motion, in which Martinez contends that he "did not commit aggravated identity theft because, based on the recent United States Supreme Court decision in *Dubin* …, his use of his clients' means of identification in relation to two separate §1028A(a)(l) predicate offenses were not at the crux of the crime." (ECF No. 170 at 2.)

The aggravated identity theft statute provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). In *Dubin*, the Supreme Court resolved a circuit split over the breadth of the statute's requirement that the means of identification be "use[d]" "in relation to" a predicate offense. 599 U.S. at 116. *Dubin* held that the requisite "relation to" the

predicate offense is present when "the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal." *Id*. at 114. In adopting this standard, *Dubin* "cited with approval our court's precedent as well as other circuit decisions that provided 'more restrained readings of the aggravated identity theft statute.'" *United States v. Ovsepian*, 113 F.4th 1193, 1205 (9th Cir. 2024) (quoting *Dubin*, 599 U.S. at 116, which in turn cited *United States v. Hong*, 938 F.3d 1040, 1051 (9th Cir. 2019)).

Here, the first underlying predicate offense in the aggravated identity theft count is mail fraud, which prohibits in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, … any such matter or thing….

18 U.S.C. § 1341. The second underlying predicate offense in the aggravated identity theft count is fraudulent use of the Social Security number of another person, which prohibits a person from "disclos[ing], us[ing], or compel[ing] the disclosure of the social security number of any person in violation of the laws of the United States." 42 U.S.C. § 408(a)(8). Under *Dubin*, the factual basis must be sufficient to show that Martinez's misuse of his clients' "means of identification" was "at the crux" of what made his mail fraud criminal and his fraudulent use of the Social Security number of another person criminal. *Dubin*, 599 U.S. at 114. "Moreover, where (as here) the predicate crime involves 'fraud or deceit,' *Dubin* states that 'the means of identification specifically must be used in a manner that is fraudulent or deceptive,' meaning that the 'fraud or deceit' must go 'to 'who' is involved.'" *United States v. Parviz*, --- F.4th ----, No. 22-50160, 2025 WL 851078, at *4 (9th Cir. Mar. 19, 2025) (quoting *Dubin*, 599 U.S. at 132).

In *Dubin*, the defendant, a manager of a psychological services company, defrauded Medicaid when he overbilled for psychological testing by inflating the credentials of the

employee who performed the testing. *See Dubin*, 599 U.S. at 110. The tests themselves were valid and had been performed on the patient named in the claim by the employee named in the claim, but the employee's overstated credentials resulted in a higher rate of reimbursement, which constituted the charged healthcare fraud. In addition to healthcare fraud, the Government also charged the defendant with aggravated identity theft, because the defendant used the patient's identification when submitting the fraudulent claims. The Court concluded that treating such conduct as identity theft would broaden the statute beyond reasonable bounds, "covering any time another person's means of identification is employed in a way that facilitates the crime." *Id*. at 122.

Similarly, in *Ovsepian*, the Ninth Circuit considered whether a defendant committed aggravated identity theft by keeping a patient's health care file "without her authorization" so that the defendant's medical clinic, which was engaged in health care fraud, could "protect against a possible audit." 113 F.4th at 1208. While maintaining the patient's health care file on site "may have lent [the clinic] the air of legitimacy and thereby helped [it] to survive an audit," the Ninth Circuit found that the defendant's possession was "not at the 'crux' of the conspiracy to commit healthcare fraud." *Id*. Instead, it was "an 'ancillary feature' of the scheme that merely facilitated its commission.'" *Id*. The Ninth Circuit emphasized that, because the government had made a "strategic choice" to base its aggravated identity theft prosecution on Ovsepian's possession of a single patient's file, it would not consider whether other conduct constituted aggravated identity theft. *Id*. The Ninth Circuit thus reversed the district court's denial of Ovsepian's 18 U.S.C. § 2255 habeas petition and directed the district court to vacate his judgment as to the aggravated identity theft count.

By contrast, in *Parviz*, the Ninth Circuit held that the evidence was sufficient to satisfy the *Dubin* standard for an aggravated identity theft conviction involving fraud or deceit. In *Parviz*, the defendant's convictions for making a false statement on a passport application and aggravated identity theft arose from her scheme to kidnap C.P., her biological daughter over whom she had lost her parental rights, and then to take C.P. out

of the United States. *See* 2025 WL 851078, at *2. In order to obtain C.P.'s passport without presenting C.P. in person (as is normally required by federal regulations), "Parviz presented a fraudulent letter falsely stating that C.P. was immunocompromised, that she required 'emergency travel to the U.K. for medically necessary operations,' and that personally appearing for the passport application 'would pose an unsurmountable risk' to C.P.'s health." *Id*. at *4. This letter "purported to be from 'Dr. Bret Allen Barker, DNP, FNP,'" and included Barker's name, National Provider Index number ("NPI"), registered nursing number, and signature. *Id*. at *2. Although Barker, who was romantically involved with Parviz, "minimally" assisted Parviz in drafting the letter, "crucially, the record evidence supports a rational inference that Parviz assembled the letter and forged Barker's signature." *Id*. at *5. The Ninth Circuit stated that, "[o]n this record, a rational trier of fact could find that the use of Barker's 'means of identification'—namely, his name, NPI, and registered nursing number—was central to the fraudulent letter's objective of establishing a medical excuse from the State Department's regulation requiring a minor's personal appearance for a passport application." *Id*. The court stated that, "[f]urther, because Parviz prepared the letter and forged Barker's signature, a rational jury could conclude that there was falsity as to 'who' was making the critical misrepresentations contained in the letter." *Id*. (quoting *Dubin*, 599 U.S. at 132). The Ninth Circuit concluded that, "the evidence is sufficient to support a finding that Parviz's use of Barker's means of identification was at 'the crux of [her] underlying criminality.'" *Id*. (quoting *Dubin*, 599 U.S. at 122).

The facts in Martinez's case are analogous to those in *Parviz* and stand in contrast to those in *Dubin* and *Ovsepian*. The factual basis of Martinez's Plea Agreement states that Martinez, "with the intent to defraud, prepared a false set of tax returns for his clients showing a substantially lower amount of tax due and owing." (ECF No. 67 at 7.) "Without his clients' knowledge, consent, or authorization, [Martinez] filed the false tax returns with IRS and FTB in lieu of the original returns presented and provided to his clients." *Id*. at 7–8. Martinez "misused his clients' means of identification, including their names and Social Security numbers (SSNs), to prepare and file false tax returns without his clients'

knowledge, consent, or authorization." *Id*. at 8. Martinez "during and in relation to the felony offense of mail fraud, … and during and in relation to the felony offense of using the SSN … of another person … to file a false and fraudulent federal income tax return, … knowingly possessed and used, without lawful authority, a means of identification of another person, to wit: the name of the person with initials J.D.S. and the SSN of the person with initials J.D.S., namely XXX-XX-8044, knowing that said means of identification belonged to the person with initials J.D.S." *Id*. at 13–14. Martinez similarly "knowingly possessed and used, without lawful authority, a means of identification of" six other people, "during and in relation to the felony offense of mail fraud, … and during and in relation to the felony offense of using the SSN … of another person to file a false and fraudulent federal income tax return." *Id*. at 14–15.

In *Dubin*, the psychological tests that were billed to Medicaid were valid and had been performed by the employee named in the claim on the patient named in the claim; the "crux of the healthcare fraud [at issue in *Dubin*] was a misrepresentation about the qualifications of petitioner's employee" and "[t]he patient's name was an ancillary feature of the billing method employed." *Dubin*, 599 U.S. at 132. Here, by contrast, Martinez mailed "false set[s] of tax returns" "without his clients' knowledge, consent, or authorization," which showed "a substantially lower amount of tax due and owing." (ECF No. 67 at 7–8.) Martinez's clients' Social Security numbers and names were not "an 'ancillary feature' of the scheme," as was the case in *Dubin* and *Ovsepian*. *Ovsepian*, 113 F.4th at 1208 (quoting *Dubin*, 599 U.S. at 132).

Instead, as in *Parviz*, Martinez's use of his clients' "means of identification was at 'the crux of [his] underlying criminality.'" *Parviz*, 2025 WL 851078, at *5 (quoting *Dubin*, 599 U.S. at 122). This is because, as in *Parviz*, "the use of [Martinez's clients'] 'means of identification' … was central to the fraudulent [tax returns'] objective" related to the underlying mail fraud and fraudulent use of the Social Security number of another person. *Id*. And as in *Parviz*, "because [Martinez] prepared the [fraudulent tax returns] and [misused his clients' means of identification without their consent], a rational jury could

conclude that there was falsity as to 'who' was making the critical misrepresentations contained in the [tax returns]." *Id*. (quoting *Dubin*, 599 U.S. at 132). For this reason, claim one of Martinez's § 2255 Motion, which contends that Martinez "did not commit aggravated identity theft … based on … *Dubin*" (ECF No. 170 at 2), fails on the merits.

In claim two of the § 2255 Motion, Martinez contends that he "did not violate [42 U.S.C.] § 408(a)(8)[, fraudulent use of a Social Security number of another person,] because, based on the decision in *Dubin*, which Defendant argues is also applicable to §408(a)(8), his disclosure, use, or compelled disclosure of his clients' Social Security number was not at the crux of its predicate offense's crime, what made its predicate offense criminal." (ECF No. 170 at 2.) *Dubin* interprets the text of the aggravated identity theft statue, 18 U.S.C. § 1028A. Dubin did not reference 42 U.S.C. § 408, and nothing in *Dubin* suggests that its reasoning extends to 42 U.S.C. § 408, which has different elements than 18 U.S.C. § 1028A. Even if *Dubin*'s statutory interpretation and reasoning were extended to 42 U.S.C. § 408, Martinez's fraudulent use of his clients' Social Security numbers was at the crux of his criminal scheme, as discussed above. As established by the factual basis of Martinez's Plea Agreement, Martinez misused his clients' Social Security numbers on the false tax returns to deceive the IRS and FTB as to "who" was filing the false returns. Claim two of Martinez's § 2255 Motion fails on the merits.

The Court finds that application of *Dubin* to the facts of this case does not invalidate Martinez's convictions and sentences imposed on Counts 21 and 33 of the First Superseding Indictment. The Court finds that Martinez's § 2255 Motion fails on the merits. The Court also finds that Martinez knowingly and voluntarily waived his right to collaterally attack his convictions and sentences on the two counts he now challenges in his § 2255 Motion, and no exception to this waiver applies.

### E. Evidentiary Hearing

The Court finds, for the reasons discussed above, that the § 2255 Motion fails to adequately allege facts which would entitle Martinez to relief, and the § 2255 Motion and record of the case conclusively show that he is not entitled to relief. Accordingly, the Court

finds that Martinez's claims may be resolved on the record and do not require an evidentiary hearing.[1] *See United States v. Rodriguez-Vega*, 797 F.3d 781, 791–92 (9th Cir. 2015).

### F. Certificate of Appealability

A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this threshold substantial showing, the movant must "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court finds that the *Barefoot* standard has not been satisfied as to either of the claims in the Section 2255 Motion. A certificate of appealability is denied.

### III. Conclusion

IT IS HEREBY ORDERED that the § 2255 Motion is denied. (ECF No. 170.) A certificate of appealability is denied as to all claims presented in the § 2255 Motion.

Dated: April 8, 2025

Hon. William Q. Hayes
United States District Court

---

[1] Martinez concedes that "resolution of his § 2255 Motion does not require discovery nor an evidentiary hearing." (ECF No. 172 at 2.)